## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SHAWN SIMMONS
  3330 Marvin Avenue
  Cleveland, OH 44109 )

)

          Plaintiff,

)

    -vs- )            **COMPLAINT**

)    Trial by Jury Endorsed Hereon

CITY OF CLEVELAND, OHIO )
  601 Lakeside Avenue
  Cleveland, OH 44114, )

)

)

          Defendant.

---

## NATURE OF THE ACTION

1. This is an action instituted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1, *et seq.*, as amended (2024 Supp.), the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.* (2024 Supp.) and for rights ensured under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States in order to vindicate state and federally protected rights against unlawful employment practices on the basis of race and color.

## JURISDICTION AND VENUE

2. This present and continuing action is authorized and instituted pursuant to Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-6(f) (2024 Supp.) (hereinafter referred to as "Title VII"), and the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.* (2024 Supp.) and, with respect to claims of denial of due process and equal protection, the action is authorized and instituted pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 and jurisdiction is asserted pursuant to 28 U.S.C §§ 1331 and 1343(3) and (4).

3. For purposes of the Title VII claims, on September 16, 2024, Plaintiff received a Notice of Right to Sue issued on by the EEOC's Indianapolis Office on September 11, 2024, attached as Exhibit A.

4. Plaintiff and Defendant are a citizen and an entity within the State of Ohio and venue exists within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division because all parties are located within Cuyahoga County, Ohio and because the unlawful employment practices alleged were and continue to be committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division.

## PARTIES

5. Plaintiff, SHAWN SIMMONS, is African-American and African-Norwegian citizen of the United States.

2

6. Plaintiff Simmons, as an experienced police officer and paramedic, at all relevant times, sought to secure employment from the Defendant City of Cleveland without considerations of race.

7. Defendant, CITY OF CLEVELAND is an "employer" as defined by Title VII and the Ohio Civil Rights Act. 8. At all relevant times,

8. Defendant has been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701(b)of Title VII, 42 U.S.C. § 2000e(b).

## GENERAL ALLEGATIONS

9. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

10. Plaintiff, SHAWN SIMMONS, the Plaintiff, is an African American and African Norwegian.

11. Prior to seeking employment as a paramedic, Plaintiff Shawn Simmons was an experienced police officer and paramedic who has spent most of his adult life in the two professions which included working as a police officer in Linndale, Ohio (2016-2018), Put-in-Bay, Ohio (2017-2018), Cleveland, Ohio (summer, 2018-summer, 2019), and a return to Put-in-Bay, Ohio 2019 (one day after having been terminated by Cleveland).

12. In April of 2023, the Department of Public Safety, Division of Emergency Medical Services ("EMS") posted a job listing for the Emergency Medical Technician Paramedic Examination position ("Paramedic").

13. Plaintiff Simmons was ready, willing and able to fulfill the criteria required to obtain employment as a paramedic with Defendant City of Cleveland.

14. The posting by Defendant City of Cleveland advised that the position would be open from April, 2023 through December 31, 2023.

15. On Friday, June 16, 2023 at 10:00 a.m., Plaintiff Simmons was scheduled for an interview for the position as a paramedic at Cleveland Public Auditorium, 500 Lakeside Avenue in Cleveland

16. At Plaintiff Simmons's June 16th interview, he appeared in person before the interview panel which was comprised of officials from the City of Cleveland's Department of Public Safety ("DPS") which included among the panel Integrity Control DPS official Anitra Merritt, Recruitment official Sergeant Desmond Anderson and Recruitment trainee Sergeant Crystal Lewis.

17. Plaintiff Simmons was appropriately attired for the interview as he walked down in an area of the basement where the interview was to take place.

18. Plaintiff Simmons was seated in the hallway and was required to wait about five minutes.

19. The Cleveland Public Safety Department panel was on the right of Plaintiff Simmons and was seated in front of a long desk with the three officials behind it.

20. Plaintiff Simmons observed all three interviewers and was particularly pleased to see Desmond Anderson whom Plaintiff Simmons met at an early May, 2023 recruitment

event and who informed Plaintiff Simmons that the interviews would be taking place in June, 2023.

21. Importantly and with the intention of being fully transparent, at the interview Plaintiff Simmons initiated with all Cleveland Public Safety Department interviewers that he had been terminated from the Cleveland Police Division of the Public Safety Department in the summer of 2019 over a 2007 incident in Norway, but that he had been serving as a police officer with different police department since that time.

22. Interviewers on behalf of the Defendant City of Cleveland acknowledged to Plaintiff Simmons that they were aware of that circumstance, explained that the position was obviously not for a police officer, but for a paramedic position and also knew that Plaintiff Simmons had been hired by another police department four years earlier.

23. As Plaintiff Simmons was an experienced and well qualified candidate, the interviewers expressed to Plaintiff Simmons during the interview that his being hired as a paramedic would face *"no problems."*

24. One of the interviewers volunteered to Plaintiff Simmons during the interview that what happened back in 2019 was "*unfair*" and that it is "*better*" to work in EMS anyway.

25. The three interviewers and Plaintiff Simmons were exceedingly open and comfortable about qualifying Plaintiff Simmons as an excellent paramedic candidate and openly expressed support for his candidacy.

26. All of the City of Cleveland's Public Safety Department officials communicated an understanding of the entire situation, were aware of the details, were appreciative of the

transparency by Plaintiff Simmons and never indicated that he had not disclosed any information concerning past employment.

27. To confirm his openness and truthfulness during the interview, there was no information which could justify that Defendant City of Cleveland claiming a lack of forthrightness about Plaintiff Simmons's prior relationship working in the division of police and that Plaintiff Simmons was fully open and truthful about his prior relationship with the police department.

28. To confirm the truthfulness of his statements to all the interviewers, none of the Public Safety officials in his presence claimed they were unaware of his full disclosure and showed their gratitude by Plaintiff Simmons being completely forthright about his background.

29. With a successful June, 2023 interview, Plaintiff Simmons was required to meet four criteria to bring him aboard as a conditional hire: (1) a successful background check (2) an active driver's license (3) a successful drug screening and (4) a successful physical examination.

30. On Thursday, July 6, 2023, the City of Cleveland confirmed Plaintiff Simmons's first letter confirming his satisfaction of the four criteria from Jacqueline Tatum, the Senior Personnel Assistant for the Defendant City of Cleveland's Department of Public Safety.

31. On Friday, August 4, 2023, based on the successful interview, successful background checks, an active driver's license, a successful drug screening and a

successful physical examination, Defendant City of Cleveland wrote to confirm to Shawn Simmons that he would now be a "*permanent hire*" when Mr. Simmons received the written confirmation from Jacqueline Tatum, Senior Personnel Assistant, Department of Public Safety/Division of EMS.

32. On Tuesday, August 15, 2023, however, Defendant City of Cleveland's Jacqueline Tatum initiated a telephone call to Plaintiff Simmons to advise him that, as a paramedic, it would be unlawful for Plaintiff Simmons to carry a gun.

33. Confused about the nature of the call, Plaintiff Simmons explained to Ms. Tatum that paramedics don't carry guns as part of their job and that he had never intended to carry a gun as a paramedic.

34. Ms. Tatum repeated that it would be a felony if he were to carry a gun.

35. Ms. Tatum then expressed her opinion that if Defendant City of Cleveland hired him, the hiring would have to be rescinded because he was a "felon."

36. Plaintiff Simmons again explained to Ms. Tatum, first, that a paramedic does not carry a gun and, second, that he was not a felon.

37. Ms. Tatum then stated that Plaintiff Simmons was "guilty of a felony" based on a criminal background check from "Europe."

38. In order to gently correct Ms. Tatum, Plaintiff Simmons explained that there was no independent background check from "Europe," but a background check from Norway which read that he 'HAS NO CRIMINAL RECORD."

39. Once she learned that she was wrong, she asked for the Norwegian record which read that Plaintiff Simmons "HAS NO CRIMINAL RECORD."

40. On August 15, 2023 at 4:12 p.m., as a follow up which Plaintiff Simmons promised Ms. Tatum, the Norwegian record which read "HAS NO CRIMINAL RECORD" was emailed to Ms. Tatum.

41. To confirm, on August 16, 2023 at 1:47 p.m., Plaintiff Simmons emailed to Orlando Wheeler, designated as the recent new Intern (meaning Interim) Commissioner, another copy of the Norwegian background check which read "HAS NO CRIMINAL RECORD."

42. Police Departments do not hire officers who have felony records and Plaintiff Simmons was at the time was a police officer who did not have a felony record.

43. Defendant City of Cleveland also knew at the time that Plaintiff Simmons worked as a paramedic for Donald Martens.

44. Moreover, as Plaintiff Simmons readied himself to attend the EMS Academy, Defendant City of Cleveland knew that he was required to resign his position at Donald Martens in order to attend the EMS Academy and did so.

45. Plaintiff Simmons previously sent evidence to Defendant City of Cleveland of white persons hired who have criminal convictions.

46. Defendant City of Cleveland was informed that any allegations of purported wrongdoing in Norway were not only expunged, but Norwegian authorities ordered that Plaintiff Simons be compensated for the wrongful allegations.

47. Once the Defendant City of Cleveland realized that refusing to hire Plaintiff Simmons because he was convicted of a felony was incorrect, Defendant City of Cleveland switched its position with a new justification that he had failed to disclose during his interview that he had been terminated by Defendant City of Cleveland as a police officer.

48. Defendant City of Cleveland, however, knew that there was full and absolute disclosure of the details about his termination as a police officer and that its justification in using the new excuse was pretextual.

## COUNT I

[DISPARITY IN HIRING AND RETAINING PLAINTIFF BY DEFENDANT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACTS OF 1964, AS AMENDED, §§42 U.S.C.§§2000e-1, *et seq.*, as (2024 Supp.]

49. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

50. Defendant City of Cleveland knew that Plaintiff Simmons was African American.

51. Defendant City of Cleveland first rejected Plaintiff Simmons because it claimed he was a convicted felon.

52. Defendant City of Cleveland accepted a white employee for employment who (a) is a convicted felon and (b) initially failed to disclose the felony conviction on the employment application with the City of Cleveland.

53. Even though Defendant City of Cleveland knew the white employee was a convicted felon, not only was the employee hired, but, after learning of the felony, Defendant City of Cleveland promoted the employee.

54. As recently as 2023, Defendant City of Cleveland again promoted the white employee who was convicted of a felony as part of the city's executive team running the City of Cleveland's Department of Public Safety.

55. The white employee, known to Defendant City of Cleveland to be a convicted felon, broke up a predominantly Black shift of EMS workers because the employee felt there should not be too many Black EMS workers on the same shift and was concerned about an all-Black EMS shift.

56. The intentional racial animus was confirmed when the white employee, known to Defendant City of Cleveland to be a convicted felon, did not break up any all-white shifts of EMS workers.

57. Even though the racial disparity of the white employee whom it made a manager was clear to Defendant City of Cleveland, it took no disciplinary action against the employee despite the overt racial discrimination practiced by the employee.

58. The racial discrimination practiced by the white employee who was a convicted felon and who employed racial bias on behalf of Defendant City of Cleveland was intentional, reckless and in disregard of Black EMS employees who worked for the City of Cleveland.

59.  Plaintiff employed a white paramedic whom they knew was a convicted felon, maintained the employee's employment and promoted the employee with knowledge that she was a convicted felon.

60.  Despite the fact that the white paramedic was a convicted felon, Defendant City of Cleveland promoted the employee to be EMS Commissioner and kept her in the position as Commissioner.

61. After prior federal litigation opened the reality of racial disparities practiced by the white commissioner who had a felony record, Defendant City of Cleveland promoted her again as part of the executive team running Defendant City of Cleveland's Department of Public Safety.

62. Defendant City of Cleveland was openly aware that being a convicted felon made no difference in maintaining and promoting the white employee.

63. Defendant City of Cleveland refused to hire Mr. Simmons because it claimed he was a convicted felon.

64. Plaintiff has substantial loss in income by Defendant's refusal to proceed with his hiring, despite his meeting all required criteria.

65. Plaintiff has substantial loss in income by Defendant's refusal to proceed with his hiring, despite his meeting all required criteria.

66. Plaintiff has sustained emotional distress and pain and suffering by Defendant's wrongful failure to hire based on race.

67. The acts and conduct of the Defendant have been intentional, malicious and in

wanton disregard to the rights and feelings of the Plaintiff.

## COUNT II

[PREXTUAL JUSTIFICATION IN TREATMENT OF THE PLAINTIFF BY DEFENDANT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACTS OF 1964, AS AMENDED, §§42 U.S.C.§§2000e-1, *et seq.*, as (2024 Supp.]

68. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

69. After Defendant City of Cleveland realized that its refusal to hire was based on the false belief that he was a convicted felon, it switched its justification to refusing to hire him because he did not disclose information.

70. But the switch by Defendant City of Cleveland in claiming Plaintiff failed to disclose information is inconsistent with facts which are not in dispute.

71. The interview Plaintiff Simmons had with all Cleveland Public Safety Department interviewers openly disclosed that (a) Plaintiff Simmons had been terminated from the Cleveland Police Division of the Public Safety Department in the summer of 2019, but that he had been serving as a police officer with a different department since that time.

72. All interviewers on behalf of the Defendant City of Cleveland acknowledged to Plaintiff Simmons that each was aware of that circumstance, explained that the position was obviously not for a police officer, but for a paramedic position and also knew that Plaintiff Simmons had been hired by another police department four years earlier.

73. As Plaintiff Simmons was an experienced and well qualified candidate, the interviewers expressed to Plaintiff Simmons during the interview that his being hired as a paramedic would face *"no problems.*"

74. Significantly, one of the interviewers volunteered to Plaintiff Simmons during the interview that what happened back in 2019 was "*unfair*" and that it is *"better"* to work in EMS anyway.

75. The three interviewers and Plaintiff Simmons were exceeding open and comfortable about qualifying Plaintiff Simmons as an excellent paramedic candidate and openly expressed support for his candidacy.

76. All of the City of Cleveland's Public Safety Department officials communicated an understanding of the entire situation, were aware of the details, were appreciative of the transparency by Plaintiff Simmons and never indicated that he had not disclosed any information concerning past employment.

77. To confirm his openness and truthfulness during the interview, there was no information which could justify that Defendant City of Cleveland claiming a lack of forthrightness about Plaintiff Simmons's prior relationship working in the division of police and that Plaintiff Simmons was fully open and truthful about his prior relationship with the police department.

78. To confirm the truthfulness of his statements to all the interviewers, none of the Public Safety officials in his presence claimed they were unaware of his full disclosure

and showed their gratitude by Plaintiff Simmons being completely forthright about his background.

79. On Thursday, July 6, 2023, the City of Cleveland confirmed Plaintiff Simmons's first letter confirming his satisfaction of the four criteria from Jacqueline Tatum, the Senior Personnel Assistant for the Defendant City of Cleveland's Department of Public Safety.

80. On Friday, August 4, 2023, based on the successful interview, successful background checks, an active driver's license, a successful drug screening and a successful physical examination, Defendant City of Cleveland wrote to confirm to Shawn Simmons that he would now be a "*permanent hire*" when Mr. Simmons received the written confirmation from Jacqueline Tatum, Senior Personnel Assistant, Department of Public Safety/Division of EMS that he was chosen as a permanent hire.

81. Defendant City of Cleveland's Department of Public Safety, thereafter, failed to do a reasonably adequate background check, which was unknown to Plaintiff Simmons, until an assistant accused Plaintiff Simmons of being a felon and, therefore, could not carry a gun as a paramedic, the reason Defendant City of Cleveland "withdrew" the offer after it had accepted Plaintiff Simmons.

82. Defendant City of Cleveland's Department of Public Safety, despite the open discussion with the DPS interviewers in June, 2023, never sought to secure information from Plaintiff Simmons or check with Norwegian authorities concerning Defendant's erroneous assumption about the truth of the circumstances which would have

discredited any action to "withdraw" the offer by Defendant City of Cleveland which had been previously accepted by Plaintiff Simmons.

83. Once the Defendant City of Cleveland erred because of misinformation and disclosed it, Plaintiff Simmons immediately provided confirmation that he had no criminal record, the basis for Defendant's "withdrawal" of his being a permanent hire.

84. Plaintiff Simmons could not have known that Defendant City of Cleveland failed to do a reasonably competent background check.

85. Once Defendant City of Cleveland openly stated its misinformation, Plaintiff Simmons immediately provided to Defendant the correct information.

86. Since Defendant City of Cleveland's failure to do a reasonably competent background check was disclosed, it was immediately rectified with Plaintiff Simmons providing to the DPS that the Norwegian record which read that Plaintiff Simmons "HAS NO CRIMINAL RECORD."

87. On August 15, 2023 at 4:12 p.m., as an immediate follow up which Plaintiff Simmons promised Ms. Tatum, the Norwegian record which read "HAS NO CRIMINAL RECORD" was emailed to DPS's Ms. Tatum.

88. To confirm, on August 16, 2023 at 1:47 p.m., Plaintiff Simmons emailed to Orlando Wheeler, designated as the recent new Intern (meaning Interim) Commissioner, another copy of the Norwegian background check which read "HAS NO CRIMINAL RECORD."

89. While Plaintiff Simmons knew the truth and did not dispute what Plaintiff Simmons provided, the failure of defendant City of Cleveland to do a reasonably competent background check was immediately solved Plaintiff Simmons provided in the information which proved that Defendant City of Cleveland simply got it wrong.

90. There was no failure to disclose, no obstruction to the information nor was there any delay in securing from the Plaintiff the fact that he was not a felon.

91. Despite the fact that Defendant City of Cleveland was openly aware that being a convicted felon made no difference in maintaining and promoting the white employee, it was nonetheless provided the information which was readily available to it if it had undertaken a competent background check.

92. Defendant City of Cleveland's actions were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

93. Plaintiff Simmons has substantial loss in income because of Defendant City of Cleveland's refusal to proceed with his hiring, despite his meeting all required criteria.

94. Plaintiff Simmons has sustained emotional distress and pain and suffering by Defendant City of Cleveland's wrongful failure to retain him as a permanent hire on account of race.

## **COUNT III**

[DISPARITY IN HIRING AND PRETEXTUAL JUSTIFICATION BY DEFENDANT IN VIOLATION OF THE OHIO CIVIL RIGHTS ACT, OHIO REVISED CODE, §§4112.01, *et seq.*, AS AMENDED (2024 Supp.]

95. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

96. Plaintiff incorporates by reference the allegations as set forth in Counts I and II as violations of the Ohio Civil Rights Act.

## COUNT IV

### [VIOLATIONS OF DUE PROCESS ENSURED UNDER THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES]

97. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

98. Defendant City of Cleveland's failure to undertake a reasonably competent background check resulted in the refusal to permit Plaintiff Simmons to proceed with his EMS training despite his acceptance of Defendant City of Cleveland's written confirmation of his being a "permanent hire."

99. Once Defendant City of Cleveland's error was disclosed to Plaintiff Simmons, he immediately secured the information confirming Defendant City of Cleveland's contention it could not hire him as a paramedic because he was a felon.

100. While Defendant City of Cleveland was incorrect because of the failure to do a reasonable check, the problem was nonetheless rendered corrected immediately by the

Plaintiff Simmons in order to proceed after being notified in writing that he was a permanent hire.

101. Defendant' City of Cleveland's obstinance in refusing to correct its error was intentional, malicious and in wanton and reckless disregard of the rights and feelings of Plaintiff Simmons and was inconsistent with its obligation to provide due process by erroneously revoking his acceptance as a permanent hire and disregarding the information he openly disclosed to DPS persons involved in his hiring.

102. Plaintiff Simmons has substantial loss in income by Defendant City of Cleveland's "termination," despite his meeting all required criteria.

103. Plaintiff Simmons has sustained emotional distress and pain and suffering by Defendant City of Cleveland's s arbitrary, unreasonable and discriminatory conduct.

## **COUNT V**

### [VIOLATIONS OF EQUAL PROTECTION ENSURED UNDER THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES]

104. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

105. While Defendant City of Cleveland freely permitted a convicted felon to be engaged as an employee and promoted the employee, when Defendant perceived Plaintiff as a convicted felon also, it "terminated" him even though he was a fulltime permanent hire.

106. The only variable between the white employee and the Plaintiff Simmons is that Plaintiff is an American-American.

107. The difference in treatment was intentional and in violation of the rights ensured the Plaintiff Simmons under the Equal Protection Clause of the Fourteenth Amendment because Defendant City of Cleveland knew that the only difference between the white employee and Plaintiff Simmons was his race.

108. Plaintiff Simmons has substantial loss in income by Defendant City of Cleveland's refusal to honor its hiring, despite Plaintiff Simmons's meeting all required criteria.

109. Plaintiff Simmons has sustained emotional distress and pain and suffering by Defendant City of Cleveland's denial of his being a permanent hire by failing to consider its error based on the misinformation arising out of the failure to conduct a reasonably competent background check and treating Plaintiff Simmons differently under color of law based on his race.

WHEREFORE, Plaintiff urges that the following relief be granted for Plaintiff Shawn Simmons and against Defendant City of Cleveland:

> A. Declare that the acts and conduct of the Defendants constitute violations of Title VII of the Civil Rights Act of l964, as amended, 42 U.S.C. §§2000e, *et seq.*, and the Ohio Civil Rights Act, Ohio Revised Code §§4112.01, *et seq.*; as well as violations of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States;

> B. Grant a permanent injunction enjoining Defendant

from future violations of the Constitution of the United States and violations of Title VII and the Ohio Civil Rights Act which should include not only Defendant City of Cleveland, but its officers, agents, employees, successors, assigns, and all persons in active concert or participation with it from engaging in any employment practices which are arbitrary under color of law and which discriminate on the basis of race or color under color of law and further enjoin any acts or conduct which has the purpose or effect of retaliating against the Plaintiff for asserting rights against discrimination based on race or color;

C. Order Defendant to institute and to otherwise carry out policies, practices and programs which provide equal employment opportunities for African-American employees which eradicate the effects of its past and present unlawful employment practices by treating them in a fashion similar to white employees;

D. Order Defendant to make whole the Plaintiff by providing appropriate back pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

E. Grant to Plaintiff appropriate compensatory damages;

F. Award the Plaintiff costs in this action including a statutory reasonable attorney fee;

G. Grant such further relief as the Court deems just, Necessary, proper and in the public interest.

*/s/ Avery Friedman*
_____

Avery Friedman (0006103)
Avery Friedman & Associates
850 Euclid Ave. Suite 701
Cleveland, Ohio 44114-3358
T: (216) 621-9282
F: (216) 621-9283
avery@lawfriedman.com
fairhousing@gmail.com

*Attorney for Plaintiff Shawn Simmons*

## **TRIAL BY JURY DEMANDED**

Plaintiff hereby demands trial by jury.

*/s/ Avery Friedman*
_____

Avery Friedman